IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT WICHITA

| | |
|---|---|
| **Lashauna Gordon, Hydia Griffin and Quintashia Hardyway, on behalf of themselves and all others similarly situated,** | COMPLAINT |
| Plaintiffs, | NO. 6:22-cv-01078–HLT-RES |
| v. | |
| **Reed's Cove Health and Rehabilitation, LLC,** | |
| Defendant. | |

### JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT
### WITH INTEGRATED MEMORANDUM IN SUPPORT

The Parties jointly move this Court for approval of the settlement reached in this Fair Labor Standards Act ("FLSA") action.

To be effective, FLSA settlements require judicial approval. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003). The Parties are simultaneously filing a Joint Motion to submit the executed Settlement Agreement ("Settlement Agreement") for *in camera* review in connection with the Court's review of the settlement.

### Memorandum in Support

The Parties have reached a settlement of all claims alleged by Plaintiffs, including Plaintiffs' FLSA claims. The settlement is the product of arms-length negotiations by experienced counsel. It will provide immediate relief to the named Plaintiffs and all individuals who have opted-in to this action, and will eliminate the risks both sides would bear if the case continued to resolution on the

1

merits. The settlement, memorialized in the Settlement Agreement submitted for review as Exhibit A to this motion,[1] is fair and reasonable and should be approved.

## Relevant Facts

This is a Fair Labor Standards Act ("FLSA") lawsuit brought by the three named Plaintiffs on behalf of themselves and all others similarly situated. The three named plaintiffs, as well as the opt-in plaintiffs, worked at Defendant Reed's Cove Health and Rehabilitation, LLC, a skilled nursing and rehabilitation facility in Wichita. During the Covid Pandemic it became difficult for skilled nursing facilities to remain fully staffed. Defendant developed a bonus plan whereby hourly employees, like CMAs and CNAs, who worked longer, or additional shifts would be paid a bonus on top of what they would otherwise earn. Sometimes when these individuals who took on additional shifts the result was that they worked over 40 hours in that workweek. Plaintiffs sued claiming that Defendant failed to factor these shift bonuses in the calculation of the regular rate for purposes of calculating overtime. The Named Plaintiffs also brought claims under the Kansas Wage Payment Act ("KWPA") that Defendant failed to pay bonuses that had been promised.[2]

During the course of this litigation, which has spanned almost a year, the parties engaged in both formal and informal discovery. Defendant issued written interrogatories, to which the named Plaintiffs responded. Defendant issued requests for production of documents, to which each of the three named Plaintiffs assisted their counsel in responding, and Plaintiffs issued requests for production, to which Defendant responded. The parties also engaged in the informal exchange of information concerning their claims and defenses.

---

[1] The Parties have agreed and request simultaneously that the Settlement Agreement be submitted to the Court for *in camera* review.
[2] The Named Plaintiffs are therefore releasing any and all claims by way of the Settlement Agreement. Opt-in plaintiffs, however, are releasing only FLSA claims and retain the right to pursue any and all other claims they may have.

After careful analysis of the information and documents revealed through the course of this litigation, the Parties began informal settlement negotiations. Once it became evident that mediation would be useful, the parties agreed to participate in mediation with attorney Diane Sorensen. The mediation, which took nearly a full day, was successful. The Parties arrived at an agreement, acceptable to all Parties, for which they now seek Court approval.

### Question Presented

Whether the proposed FLSA settlement constitutes a fair and reasonable compromise of disputed issues?

### Argument

Proposed settlements in FLSA actions require court approval because private settlements will not effectuate a valid release. *See Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003) (*citing Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)); *see also Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, wage claims under the FLSA are typically settled or compromised in one of two ways. First, under 29 U.S.C. § 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment waives his right to bring suit for unpaid wages and liquidated damages. *See Lynn's Food Stores*, 679 F.2d at 1353. Second, under a private FLSA enforcement action, district courts may approve settlements resulting from contested litigation over a *bona fide* dispute between the parties. *See id.* When the latter option is proposed, as here, the Court should approve the settlement "after scrutinizing the settlement for fairness." *Id.* (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

The Court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-pronged. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties under the FLSA.

3

Typically, Courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *See id.* at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *See id.*

This Court has routinely approved joint motions to approve FLSA settlements. *See, e.g.*, *West v. First Franklin,* Order Approving FLSA Settlement, Case No. 06-2064 (D. Kan. July 31, 2007); *Archer v. Nat'l Bank of Kansas City*, Order Approving Settlements, Case No. 05-2382-KHV (D. Kan. Feb. 15, 2006). This Court should readily conclude the parties' settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

### I. The Proposed Settlement Is the Product of Contested Litigation

There is no question the proposed settlement is the product of contested litigation. In their Complaint, Plaintiffs made detailed factual allegations describing Defendant's allegedly unlawful compensation practices. In their Answer, Defendant denied Plaintiffs' material factual allegations and asserted numerous defenses that it argued would bar some of Plaintiffs' claims, as well as challenging Plaintiffs' basis to maintain the FLSA claims collectively.

During nearly a year of litigation, the parties both informally exchanged information and documents concerning their claims and defenses and engaged in formal discovery, including interrogatories and requests for production. In addition to their factual investigations, the parties also undertook considerable legal analysis of the various issues implicated in this case, including the Named Plaintiffs' theory that unpaid bonuses could implicate claims under the FLSA, and Defendants' various affirmative defenses.

The settlement of this lawsuit resulted only after ongoing and protracted negotiations. Prior to settlement, the parties had a full opportunity to analyze pertinent factual and legal issues and assess

the strengths and weaknesses of their claims and defenses. Accordingly, the Court should readily conclude the proposed settlement was the product of contested litigation.

## II. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed settlement. Both of these issues are satisfied.

### A. A Bona Fide Dispute Existed Between the Parties

The three named Plaintiffs and the 14 other former/current employees who opted-in to this action alleged Defendant violated the FLSA because it developed a bonus plan whereby hourly employees, like CMAs and CNAs, who worked longer, or additional shifts would be paid a bonus on top of what they would otherwise earn, but did not factor these shift bonuses into overtime calculations when employees worked more than 40 hours in a workweek.

Defendant denied the allegations of the named Plaintiffs and the opt-ins, arguing that the named Plaintiffs and opt-ins were properly paid.

If Plaintiffs' allegations were ultimately correct, Defendant would be faced with the prospect of a monetary verdict in favor of Plaintiffs, as well as an obligation to pay legal fees and costs incurred by Plaintiffs in addition to their own. If Defendant's arguments were correct, then Plaintiff's recovery would have been substantially reduced and the opt-in Plaintiffs may have received no recovery at all if the case was ultimately not maintainable as a collective action. Accordingly, the Court should readily conclude a *bona fide* dispute between the parties existed.

### B. The Proposed Settlement Is Fair and Reasonable

This settlement was the product of arm's-length negotiations by experienced counsel and has the salutary effect of: (i) providing immediate monetary relief to the named Plaintiffs and the fourteen opt-ins, (ii) eliminating inherent risks both sides would bear if this litigation continued to resolution on the merits, and (iii) providing fair compensation for attorneys' fees. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (recognizing courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.")

To further support the reasonableness of the settlement, Plaintiffs' counsel advises the Court that the proposed settlement payments to each plaintiff represent 100 percent of the alleged unpaid overtime (pursuant to the pay records produced by Defendant) and 50% of the potential liquidated damages available. Plaintiffs acknowledge there are substantial disputes in the case about liability and the availability of liquidated damages. Defendant disputes liability on the Named Plaintiffs' wage claims and disputes liquidated damages under both the FLSA and KWPA, arguing that its pay system was operated in good faith. Plaintiffs' counsel further advises the Court that the settlement agreement pays Plaintiffs' counsel significantly less in fees than appears on their statements to date.[3]

---

[3] Plaintiffs' Counsel will file a separate Motion for Approval of Attorney Fees.

**III.     Public Policy Favors Settlements**

Public policy favors settlements. This is particularly true where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

**IV.     Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Immediate Relief**

The parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's defenses. If litigation continues, Plaintiffs would face many obstacles, including depositions, motion practice regarding the propriety of liquidated damages, motion practice on whether the conditionally certified class should be decertified, and the necessity of pursuing the claims of named Plaintiffs and fourteen opt-ins through trial in court. Further, even if Plaintiffs prevailed on liability, Plaintiffs would face Defendant's arguments against both the nature and extent of the Named Plaintiffs' damages.

The proposed settlement brings immediate value to Plaintiffs. Although Plaintiffs contend that the recovery at trial would have been greater than sums received under the Settlement Agreement, it is also possible the recovery would have been less, and perhaps nothing at all for the opt-in Plaintiffs if the collective was decertified. Consequently, this settlement brings Plaintiffs monetary value *now*, as opposed to years from now, and provides certainty regarding the outcome. A significant factor weighing in favor of approval of the proposed settlement is that benefits will be immediately received by the Plaintiffs and made certain by the settlement. *See In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.").

**V.     The Parties and Their Counsel Support the Settlement.**

After thorough investigation of the facts and law, the parties have gained a comprehensive knowledge of Plaintiffs' claims and Defendant's defenses. Additionally, the parties have ample evidence necessary to an informed assessment of the proposed settlement. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica*, 210 F.R.D. at 702. Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the parties' counsel believes the settlement is fair, reasonable, and adequate. Indeed, the settlement was the product of a formal mediation process with reputable mediator Diane Sorensen. Resolution by mediation after significant litigation provides additional indicia of a reasonable settlement. *James v. Boyd Gaming Corp.,* 2022 WL 4482477 (D. Kan. 2022) (noting mediation as indicating the case was "fairly and honestly negotiated.").

Additionally, Defendant and the named Plaintiffs (who have written authority to act on behalf of the opt-ins) have executed a Settlement Agreement indicating their approval of the settlement. In addition, Plaintiffs' counsel has communicated the proposed settlement to each of the opt-in Plaintiffs and none have voiced any objections. Accordingly, the parties respectfully suggest this Court should conclude the proposed settlement reflects a fair and reasonable resolution of a bona fide dispute under the FLSA and approve the settlement.

**VI.    Final Certification of the Class is Appropriate.**

When parties settle FLSA claims before the court has ruled on final certification, the court must make some final class certification finding before it can approve an FLSA collective action settlement. *Barbosa*, 2015 WL 4920292, at *3 (citing McCaffrey v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 32436, at *3 (D. Kan. Jan. 5, 2011)).

In the Tenth Circuit, district courts use a two-step process to determine whether plaintiffs are "similarly situated" for purposes of Section 216(b). First, the courts apply a fairly lenient standard for

purposes of conditional certification during the course of discovery. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir.2001). Then, during the second stage, usually prompted by a motion to decertify, the courts apply a stricter standard. *See id.*

Plaintiff's counsel has personally discussed the settlement with all but two of the opt-in plaintiffs. The other two have been left voicemail messages and have been sent emails. Neither has objected.

The Court granted plaintiffs' motion for conditional certification because the parties stipulated to it. (Doc. 19). There is no reason to reach a different result now. All plaintiffs and op-in plaintiffs were subject to the same policy – receiving a shift bonus that was not factored into their regular rate when calculating overtime. Although it is true that many of the opt-in plaintiffs have very small claims as compared to the named plaintiffs, such that one might view them as different, this point actually cuts the other direction. The amount at stake for most of the opt-in plaintiffs would make pursuing their claims on their own impractical. "Fairness and procedural considerations—such as allowing plaintiffs to pool their resources for litigation—favor collective treatment here." *Barbosa v. National Beef Packing Co., LLC,* 2015 WL 4920292 (D. Kan. 2015); *Fulton v. TLC Lawn Care, Inc.*, No. 10–2645, 2012 WL 1788140, at *3 (D. Kan. May 17, 2012).

As it turned out, the Named Plaintiff's claims for unpaid bonuses were significantly larger than the unpaid overtime claims supported by the pay records produced by Defendant. Consequently, each Named Plaintiffs is receiving significantly more in settlement of their KWPA claims than any party is receiving for their FLSA overtime claims. Although under some circumstances a significant disparity in the settlement amounts might raise inferences about the adequacy of the Named Plaintiffs' efforts to protect the interests of the class, here there should be no such inference. Each opt-in plaintiff has opted into the FLSA collective action only. Thus, the settlement allows them to retain the right to pursue elsewhere any KWPA claims they may have. Further, court approval of a KWPA

9

settlement is not a legal necessity. The focus for the Court, therefore, is whether the Named Plaintiffs adequately pursued the FLSA claims for the benefit of all opt-in plaintiffs. They most certainly did, as each opt.-in plaintiff will receive more in settlement than the amount they claim as unpaid overtime.

The Court should thus provide final certification of the class to allow the settlement to proceed.

### Conclusion

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the parties under the FLSA. The parties engaged in lengthy investigation of the facts and law before reaching agreement. The parties believe the settlement is fair, reasonable, and adequate, and provides Plaintiffs with significant relief in a hotly contested matter. For these reasons, and those set forth above, the parties respectfully suggest the Court should approve the Settlement.

Respectfully submitted,

| | |
|---|---|
| Donald N. Peterson, II | Forrest T. Rhodes, Jr. |
| Donald N. Peterson, II | Forrest T. Rhodes, Jr. KS 19567 |
| Sean M. McGivern | FOULSTON, SIEKIN, LLP |
| Nathan R. Elliott | 1551 N. Waterfront Parkway, Suite 100 |
| GRAYBIIL & HAZLEWOOD, LLC | Wichita, KS 67206-4466 |
| 218 N. Mosley St. | Phone: 316-291-9555 |
| Wichita, KS 67202 | Fax: 866-347-5132 |
| 316.266.4058 | Email: frhodes@foulston.com |
| 316.462.5566 (facsimile) | **ATTORNEYS FOR DEFENDANTS** |
| **ATTORNEYS FOR PLAINTIFFS** | |

CERTIFICATE OF SERVICE

The undersigned certifies that on the 24th day of February, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent electronic notice of such filing to all of the counsel of record.

s/ Donald Peterson, II
Donald N. Peterson, II
